1  Craig L. Chisvin, Esq., SBN: 191825
   craig.chisvinlaw@vmail.com
2  CHISVIN & ASSOCIATES
   11845 W. Olympic Blvd.,
3  Suite 1040W
   Los Angeles, CA 90064
4  Tel: (310) 820-4488, Fax: (310) 820-8485

5  Rafael Shpelfogel, Esq., SBN 250208
   LAW OFFICES OF RAFAEL SHPELFOGEL PC
6  6404 Wilshire Boulevard, Ste 930
   Los Angeles, CA 90048
7  Tel: (323) 651-0560, Fax: (323) 651-0561

8  Attorneys for Plaintiffs

9

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERICO CORNEJO, individually, and as the personal representative and administrator of the ESTATE OF JIMMY CORNEJO; SYLVIA AMESQUITA <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF LOS ANGELES, A Governmental Entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, A Governmental Entity; LEROY D. BACA, Sheriff, individually and in his Official Capactiy; and DOES 1 to 100, inclusive, <br><br> Defendant(s). | CASE NO. CV 12-3242 SVW (SHx) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Filed concurrently with Plaintiffs' Objection to Defendant County of Los Angeles' Request For Judicial Notice] <br><br> Date: July 23, 2012 <br> Time: 1:30 p.m. <br> Ctrm: 6 <br><br> **MATTER FOR DETERMINATION BY HONORABLE STEPHEN V. WILSON** |

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiffs Federico Cornejo, individually, and as the personal representative and administrator of the ESTATE OF JIMMY CORNEJO, and Sylvia Cornejo ("PLAINTIFFS") file the instant Opposition to Defendant County of Los Angeles' ("COUNTY OF LOS ANGELES" / "LOS ANGELES COUNTY SHERIFF'S DEPARTMENT / COUNTY") Motion to Dismiss the First Amended Complaint ("FAC").

1

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................2

I.  INTRODUCTION ...........................................................................................................2

II.  SUMMARY OF ARGUMENT AND ALLEGATIONS IN THE FAC ............................3

III.  STANDARD FOR RULING ON A MOTION TO DISMISS .........................................7

IV.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THAT COUNTY EMPLOYEE OR OFFICER WAS DELIBERATELY INDIFFERENT TO DECEDENT'S SERIOUS MEDICAL NEEDS AND THAT SUCH DELIBERATE INDIFFERENCE WAS PURSUANT TO A COUNTY POLICY/CUSTOM AND THAT DECEDENT DIED AS A RESULT THEREOF ........................................................................................................10

V.  THE FIRST CLAIM IS NOT DUPLICATIVE OF THE SECOND CLAIM FOR RELIEF.18

VI.  PLAINTIFFS HAVE NOT FAILED TO STATE A CLAIM FOR RELIEF UNDER THE EIGHTH AMENDMENT AS DECEDENT MAY HAVE BEEN A CONVICTED PRISONER...........................................................................................................................18

VII.  CONCLUSION..............................................................................................................19

PLAINTIFFS' OPPOSITION TO DEFENDANT SHERIFF LEROY D. BACA'S MOTION TO DISMISS

1

# TABLE OF AUTHORITIES

2

3 | **<u>Cases</u>** | **<u>Page</u>**

4 *Braden v. Wal-Mart Stores, Inc,*

5      588 F. 3d 585, 595 (8th Cir.2009) ............................................................................7

6 *Baker v. Riverside County Office of Ed.,*

7      584 F. 3d 821, 824 (9th Cir. 2009) ..........................................................................7

8 *Starr v. Baca*,

9      652 F.3d (9th Cir. 2011) ...................................................................................7-13

10 *Bell Atlantic Corp. v. Twombly,*

11      550 U.S. 544 (2007) ............................................................................................7

12 *Car Carriers, Inc. v. Ford Motor Co.,*

13      745 F.2d 1101, 1106 (C.A.7 1984) ......................................................................7-8

14 *Larez v. City of Los Angeles,*

15      946 F.2d 630 (9th Cir.1991) ................................................................................10

16 *Farmer v. Brennan, 511 U.S. 825,*

17      114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ..............................................................11

18 Hansen v. Black,

19      885 F.2d 642, 646 (9th Cir.1989) ........................................................................12

20 *Dubner v. City & Cnty. of San Francisco,*

21      266 F.3d 959, 968 (9th Cir.2001) ........................................................................12

22 *Watkins v. City of Oakland,*

23      *145 F.3d 1087, 1093 (9th Cir.1998)* ....................................................................12

24 *Menotti v. City of Seattle,*

25      409 F.3d 1113, 1149 (9th Cir.2005) ....................................................................13

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT SHERIFF LEROY D. BACA'S MOTION TO DISMISS

1   *Statutes*

2       *Cal. Gov.Code §§§§ 26605, 26610* ..........................................................................

3       *Cal.Penal Code §§ 4006* ........................................................................................

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT SHERIFF LEROY D. BACA'S MOTION TO DISMISS

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3  I.  **INTRODUCTION**

4        Decedent JIMMY CORNEJO ("Decedent") was an inmate housed in the Los

5  Angeles County jail system. On approximately October 7, 2010, Decedent JIMMY

6  CORNEJO was transferred to custody in the Twin Towers Jail, located at 441 Bauchet St.,

7  Los Angeles, CA 90012, operated by Defendants **COUNTY OF LOS ANGELES and** LOS

8  ANGELES COUNTY SHERIFF'S DEPARTMENT. At that time, the Decedent JIMMY

9  CORNEJO was placed into the Suicide Watch Holding Area.

10        On October 31, 2010, Decedent JIMMY CORNEJO collapsed and was ultimately

11  pronounced dead.

12        Truly, COUNTY OF LOS ANGELES is putting forth the best arguments they can

13  under the circumstances and should be commended for same, however, based upon

14  COUNTY OF LOS ANGELES' motion, it would appear that COUNTY truly believes that

15  PLAINTIFFS should not have filed this matter as the Autopsy Report pertaining to

16  Decedent is determinative of Decedent's death and said Autopsy Report cannot be

17  challenged. Further, COUNTY ignores the fact that there was a significant delay in the

18  monitoring of Decedent by COUNTY and that there was nothing COUNTY could have

19  done to prevent the death of JIMMY CORNEJO. COUNTY's arguments, although they are

20  creative, are substantially flawed in many respects and based upon the law, PLAINTIFFS

21  have uniquivocally complied with the pleading standards pertaining to this stage of

22  litigation and COUNTY has every right to file a dispositive motion ie a Motion For

23  Summary Judgment if PLAINTIFFS do not have enough facts to support their allegations.

24        Unfortunately for COUNTY, PLAINTIFFS will not simply fold up their tent and walk

25  away as it is specifically alleged by PLAINTIFFS that **Defendants failed to follow their**

26  **internal polices regarding monitoring the Decedent, i.e. rounds were apparently to**

27  **have been made every 15 minutes regarding inmates on suicide watch, however,**

28  *apparently* **due to a shift change Defendants did not check on Decedent for 35**

2

1  **minutes.** Further it is alleged that Defendants' failures proximately caused the death of
2  Decedent JIMMY CORNEJO (whatever the exact cause of cause death was i.e. the
3  Autopsy Report stated that the mode of death is "Undetermined," homicide was "not
4  suspected" and "circumstances are not consistent with suicide" [suicide was not
5  specifically ruled out in said report], and a determination between a "Natural and Accident"
6  cause of death could not be made by the Deputy Medical Examiner]. Regardless, of what
7  the Autopsy Report stated, we are sure that all counsel in this matter would agree that *an*
8  *Autopsy Report can be challenged and is not determinative/conclusive ie due process*
9  *allows that the Deputy Medical Examiner can be cross-examined under oath pertaining to*
10  *his opinions, judgments and conclusions and same can be challenged by other experts.*

11      Pursuant to statute and caselaw that is analogous to the instant case, PLAINTIFFS
12  have in good-faith clearly alleged COUNTY's participation in constitutional deprivations
13  and COUNTY's Motion should be denied.

14  II.   **SUMMARY OF ARGUMENT AND ALLEGATIONS IN THE FAC**

15      PLAINTIFFS have clearly sated their claim for a civil rights violation because they
16  have alleged more than enough facts to show that an officer or employee of COUNTY was
17  deliberately indifferent to the serious medical needs of Decedent JIMMY CORNEJO, as a
18  result of an official policy or established custom of COUNTY OF LOS ANGELES.  Further,
19  PLAINTIFFS has sufficiently stated a claim for a civil rights violation because that have
20  alleged facts to show that the Decedent died as a result of an official policy or established
21  custom of COUNTY OF LOS ANGELES.

22      The FAC alleges the following:

23      "In approximately 1999, under threat of a lawsuit by the DOJ, BACA and the
24  COUNTY submitted a Memorandum of Understanding ("MOU") with the DOJ which
25  required BACA and the COUNTY to address and correct continuous constitutional
26  violations to which inmates were being subjected, particularly inmates suffering from
27  mental problems. BACA personally signed the MOU. However, after years of monitoring
28  the County Jail system, under the authority of the MOU, in 2006, the DOJ experts issued a

3

1   report which still found noncompliance with many of its recommendations regarding the
2   abuse of inmates and the deficiencies which continue at county jails which constitute a
3   pattern and practice of constitutional violations. BACA received the monitoring reports and
4   was responsible for the institution of policies and procedures to correct the
5   unconstitutional conditions, but failed to do so." FAC Para 19;

6        "In February 2005, BACA received notice from the Special Counsel to the LACSD,
7   in the 19th Semiannual Report that his deputies conduct was ending up costing county tax
8   payers millions of dollars annually in payments of civil judgments and settlements, in
9   cases where the internal investigations had found no wrong-doing. BACA was notified by
10   his Special Counsel that a review of twenty-nine (29) cases involving misconduct that
11   settled for $100,000.00 or more over the past five years, only eight resulted in any type of
12   discipline to the involved deputies or policy change in the LACSD. Therefore, BACA was
13   again aware of the systematic deficiencies in supervision and lax discipline, but has failed
14   to make policy changes knowing the risk of harm created by allowing misconduct to go
15   unaddressed." FAC Para 20;

16        "In February of 2005, the findings of inmate abuse was again publicly presented to
17   BACA by Special Counsel Merrick Bobb, in a report to the Board of Supervisors finding
18   the "Los Angeles County's largest jail is so outdated, understaffed, and riddled with
19   security flaws that it jeopardizes the lives of guards and inmates." The Special Counsel's
20   report concluded that the Men's Central Jail is "nightmarish to manage" and suffers from
21   lax supervision and a long-standing jail culture that has shortchanged accountability fro
22   inmate safety and security." FAC Para 21;

23        "In August of 2005, BACA received notice from the Special Counsel to the LACSD
24   in the 20th Semiannual Report that his management and custody facilities was resulting in
25   deputies having very low morale and bitterness due to stagnation in jail assignments for an
26   average of five to seven years. The Report pointed to a substantial number of deputies in
27   custody assignments leaving LACSD for positions with other police agencies (sixty-five in
28   five months) resulting in insufficient staffing and forcing overtime replacements. The

1   Report advised BACA that any longer than two years in a custody assignment is not good

2   for the deputies, the inmates, the LACSD or the public as deputies eager to get to a patrol

3   assignment may become bitter, jaded and complacent. BACA is aware of the risk of harm

4   created by these policies and yet there has been no change apparent notwithstanding his

5   counsel's recommendations."FAC Para 22;   and

6       "The Office of Independent Review, who participates in jail investigations and

7   reviews LACSD investigations, Public Oversight/ Quarter 2007, continued to give notice to

8   BACA of deputies abandoning their posts, failing to monitor, falling asleep, not following

9   procedures, failing to conduct timely security checks, and deputies left inmates

10  unsupervised."FAC Para 23;

11      In its Motion, COUNTY OF LOS ANGELES states that PLAINTIFFS do not allege

12  that Decedent committed suicide, this is true, as the Autopsy Report, which was wrongfully

13  attached to COUNTY OF LOS ANGELES' Request For Judicial Notice, is not

14  determinative of Decedent's cause of death (said Autopsy Report does not specifically rule

15  out that Decedent did not commit suicide). But what PLAINTIFFS do allege is that

16  COUNTY did not follow their own policies regarding monitoring individuals that were

17  housed in a suicide watch hold area (apparently due to a shift change), and said

18  violation/delay was a cause of Decedent's death ie JIMMY CORNEJO would not have

19  died if COUNTY OF LOS ANGELES was not deliberately indifferent to the serious medical

20  needs of Decedent. FAC Paras. 43, 45, 65, 81 and83..

21      Decedent may have very well committed suicide, but this is not an issue that cannot

22  be determinative at this point in time as there needs to be discovery conducted and expert

23  testimony obtained pertaining to cause of death as the author of the Autopsy Report, is

24  not the final arbitrator pertaining to the cause of death and regardless, PLAINTIFFS have

25  clearly alleged that COUNTY did not follow their own policies and said death could have

26  been prevented if COUNTY was not deliberately indifferent to the serious medical needs

27  of Decedent. FAC Paras. 43, 45, 65, 81 and 83..

28      **COUNTY does not have any caselaw to support their proposition that the FAC**

1   **must state what the serious medical condition was, nor do they have any caselaw to**
2   **support that PLAINTIFFS must state the cause of death, and nor do they have**
3   **caselaw to support that PLAINTIFFS must state what the specific policy or custom**
4   **was that such deliberate indifference effectuated (COUNTY ignores that PLAINTIFFS**
5   **do state that at least one policy was violated ie COUNTY's policy to monitor the**
6   **inmates on suicide watch every 15 minutes, FAC Para. 33).** PLAINTIFFS have
7   sufficiently plead what is needed under the law and PLAINTIFFS cannot know every fact
8   pertaining to the untimely death of Decedent and that is why there is discovery in cases.

9       COUNTY falsely states that without question, Decedent died as a result of low
10  sodium levels and apparently there was nothing that COUNTY could have done.
11  Respectfully, PLAINTIFFS have plead what is required under the law and PLAINTIFFS are
12  entitled to conduct discovery to further support the allegations in the FAC. For example,
13  PLAINTIFFS would like to know specifically why Decedent was housed in the suicide
14  holding area and are entitled to conduct discovery pertaining to this and many other
15  issues.

16      *Apparently done tongue in cheek, COUNTY states that how could Defendants have*
17  *known about Decedent's serious medical condition?, how could Defendants have known*
18  *that Decedent required medical attention?, and how COUNTY employees knew that*
19  *Decedent had an apparent electrolyte imbalance ore the serious nature of such condition?*
20  Obviously, many of these facts will be known to PLAINTIFFS through the discovery
21  process as PLAINTIFFS do not have to specifically plead all of facts that occurred
22  pertaining to this tragedy.

23      COUNTY even goes so far as to hint that PLAINTIFFS experts should have already
24  included their specific opinions in the FAC pertaining to alleging the specific facts to show
25  how more frequent monitoring would have resulted in a different outcome. It appears that
26  COUNTY truly believes that the entire case should be tried at the initial pleading stage of
27  litigation. Not only is this ludicrous, but noticeably absent from the instant motion is that
28  COUNTY does not have any support in the law for the alleged deficiencies of

1 | PLAINTIFFS' FAC.

2 | III.   **STANDARD FOR RULING ON A MOTION TO DISMISS**

3 | All reasonable inferences from the facts alleged are drawn in plaintiff's favor in

4 | determining whether the complaint states a valid claim. Twombly and Iqbal did not change

5 | this fundamental tenet of Tule 12(b)(6) practice. *Braden v. Wal-Mart Stores, Inc.* 588 F. 3d

6 | 585, 595 (8th Cir.2009). *Baker v. Riverside County Office of Ed.* 584 F. 3d 821, 824 (9th Cir.

7 | 2009).

8 | **Curiously absent from COUNTY's motion is any reference to *Starr v. Baca* 652**

9 | **F.3d (9th Cir. 2011)**, which is directly on point with the instant case pertaining to the

10 | pleading standard that PLAINTIFFS must comply with under the law. **As PLAINTIFFS**

11 | **have more than complied with the pleading requirements against Defendant BACA,**

12 | **individually, the same is to be true pertaining to Defendant COUNTY.**

13 | The Court in *Starr* analyzed *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), as

14 | the Court stated that plaintiff in *Twombly* alleged a violation of Section 1 of the Sherman

15 | Act. Applying the pleading standard of Rule 8(a), the Court wrote ""that an allegation of

16 | parallel conduct and a bare assertion of conspiracy will not suffice," *Twombly* at 556, even

17 | though the existence of parallel conduct and a conspiracy would violate Section 1. The

18 | Court required more than just notice of the claim. It required that the claim be plausible.

19 | ""[W]e hold that stating such a claim requires a complaint with enough factual matter

20 | (taken as true) to suggest that an agreement was made. Asking for plausible grounds to

21 | infer an agreement does not impose a probability requirement at the pleading stage; it

22 | simply calls for enough fact to raise a reasonable expectation that discovery will reveal

23 | evidence of illegal agreement." *Twombly.* at 556,  The Court made clear in *Twombly* that

24 | it was concerned that lenient pleading standards facilitated abusive antitrust litigation. It

25 | provided, with approval, the following citation:

26 | *See also Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (C.A.7 1984)

27 | (""[T]he costs of modern federal antitrust litigation and the increasing caseload of

28 | the federal courts counsel against sending the parties into discovery when there is

7

1    no reasonable likelihood that the plaintiffs can construct a claim from the events

2    related in the complaint"") *Twombly.* at 558, 127 S.Ct. 1955.

3    The Court in *Starr* went on to state that the Court *Twombly* appeared concerned

4    that in some complex commercial cases the usual lenient pleading standard under Rule

5    8(a) gave too much settlement leverage to plaintiffs. That is, if a non-specific complaint

6    was enough to survive a motion to dismiss, plaintiffs would be able to extract undeservedly

7    high settlements from deep-pocket companies. The *Starr* Court also delineated that the

8    Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, was concerned that the usual

9    lenient standard under Rule 8(a) would provide too little protection for high-level executive

10   branch officials who allegedly engaged in misconduct in the aftermath of September 11,

11   2001. To the extent that we perceive a difference in the application of Rule 8(a) in the two

12   groups of cases, it is difficult to know in cases that come before us whether we should

13   apply the more lenient or the more demanding standard. Id at 1206.

14   But whatever the difference between these cases, we can at least state the

15   following two principles common to all of them. First, to be entitled to the presumption of

16   truth, allegations in a complaint or counterclaim may not simply recite the elements of a

17   cause of action, but must contain sufficient allegations of underlying facts to give fair

18   notice and to enable the opposing party to defend itself effectively. Second, the factual

19   allegations that are taken as true must plausibly suggest an entitlement to relief, such that

20   it is not unfair to require the opposing party to be subjected to the expense of discovery

21   and continued litigation. Id at 1205-1206.

22   Viewed in the light of all of the Supreme Court's recent cases the Court in *Starr*

23   stated that the allegations of Starr's complaint satisfy the standard of Rule 8(a). We do not

24   so hold merely because Starr's complaint, like the complaint in *Erickson,* alleges

25   deliberate indifference in violation of the Eighth and Fourteenth Amendments. Rather, we

26   so hold because his complaint complies with the two principles just stated.  Id at 1217..

27   The ruling in *Starr* specifically stated that operative complaint makes detailed

28

8

factual allegations that go well beyond reciting the elements of a claim of deliberate indifference. These allegations are neither ""bald"" nor ""conclusory,"" and hence are entitled to the presumption of truth. *Iqbal*, 129 S.Ct. at 1951. Id at 1206-1207.

The instant case in analogous to *Starr* in that PLAINTIFFS specifically allege numerous incidents in which inmates in Los Angeles County jails have been killed or injured because of the culpable actions of the subordinates of COUNTY. The FAC specifically alleges that Sheriff Baca was given notice of all of these incidents. It specifically alleges, in addition, that Sheriff Baca was given notice, in several reports, of systematic problems in the county jails under his supervision that have resulted in these deaths and injuries. Finally, the FAC alleges that Sheriff Baca did not take action to protect inmates under his care despite the dangers, created by the actions of his subordinates, of which he had been made aware. These incidents are sufficiently detailed to give notice to Sheriff Baca of the nature of Starr's claim against him and to give him a fair opportunity to defend against it. They are far from the ""bare assertion"" in *Iqbal* that defendants subjected Iqbal to harsh conditions of confinement ""solely on account"" of his ""religion, race, and/or national origin." Id at 1206-1208.

Further, the factual allegations in PLAINTIFFS' FAC, just like in *Starr's* complaint plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr. There is no "obvious alternative explanation,"" within the meaning of *Iqbal,* for why Sheriff Baca took no action to stop his subordinates' repeated violations of prisoners' constitutional rights despite being repeatedly confronted with those violations, such that the alternative explanation requires us to conclude that Starr's explanation ""is not a plausible conclusion."" *Iqbal,* 129 S.Ct. at 1951, 1952. Id at. 1208.

If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's

9

1   plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible.
2   The standard at this stage of the litigation is not that plaintiff's explanation must be true or
3   even probable. The factual allegations of the complaint need only ""plausibly suggest an
4   entitlement to relief."" *Id.* at 1951. As the Court wrote in *Twombly,* Rule 8(a) "*does not*
5   *impose a probability requirement at the pleading stage;* it simply calls for enough fact to
6   raise a reasonable expectation that discovery will reveal evidence"" to support the
7   allegations. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (emphasis added). *Starr's*
8   complaint satisfies that standard. Id at 1217. Similarly, PLAINTIFFS' FAC satisfies this
9   standard.

10   We hold that the Supreme Court's decision in *Iqbal* did not alter the substantive
11   requirements for supervisory liability claims in an unconstitutional conditions of
12   confinement case under the Eighth and Fourteenth Amendments where deliberate
13   indifference is alleged. We further hold that Starr has sufficiently alleged under Rule 8(a) a
14   supervisory liability claim of deliberate indifference against Sheriff Baca. We therefore
15   reverse the district court's dismissal of Starr's claim against Sheriff Baca and remand for
16   further proceedings. Id at 1216-1217. Based thereon, PLAINTIFFS have more than
17   alleged the pleading requirements pertaining to COUNTY as BACA was an employee of
18   COUNTY.

19   **IV.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THAT COUNTY EMPLOYEE OR**
20        **OFFICER WAS DELIBERATELY INDIFFERENT TO DECEDENT'S SERIOUS**
21        **MEDICAL NEEDS AND THAT SUCH DELIBERATE INDIFFERENCE WAS**
22        **PURSUANT TO A COUNTY POLICY/CUSTOM AND THAT DECEDENT DIED AS**
23        **A RESULT THEREOF**
24
25   We have long permitted plaintiffs to hold supervisors individually liable in
26   §§ 1983 suits when culpable action, or inaction, is directly attributed to them. We have
27   never required a plaintiff allege that a supervisor was physically present when the injury
28   occurred. In *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir.1991), we explained that

to be held liable, the supervisor need not be ""directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury."" *Id.* at 645. Rather, the supervisor's participation could include his ""own culpable action or inaction in the training, supervision, or control of his subordinates, ""his acquiescence in the constitutional deprivations of which the complaint is made," or ""conduct that showed a reckless or callous indifference to the rights of others. Id. at 646. Id. At 1206.

The Court in *Starr* described that the Plaintiff does not allege purposeful discrimination by Sheriff Baca. Rather, he alleges unconstitutional conditions of confinement in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, as incorporated through the Due Process Clause of the Fourteenth Amendment. A claim of unconstitutional conditions of confinement, unlike a claim of unconstitutional discrimination, may be based on a theory of deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement and the liability of that supervisor. Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates. We see nothing in *Iqbal* indicating that the Supreme Court intended to overturn longstanding case law on deliberate indifference claims against supervisors in conditions of confinement cases. Id at 1206-1207.

We therefore conclude that a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates. Id at 1207.

This is exactly what PLAINTIFFS have alleged in the instant case ie a claim based upon a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates. Therefore,

11

1    COUNTY is implicated by the same allegations as they were also made against COUNTY.

2         A defendant may be held liable as a supervisor under §§ 1983 "if there exists either

3    (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient

4    causal connection between the supervisor's wrongful conduct and the constitutional

5    violation."" *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989). ""[A] plaintiff must show the

6    supervisor breached a duty to plaintiff which was the proximate cause of the injury. The

7    law clearly allows actions against supervisors under section 1983 as long as a sufficient

8    causal connection is present and the plaintiff was deprived under color of law of a federally

9    secured right."" *Redman,* 942 F.2d at 1447 (internal quotation marks omitted) ."The

10   requisite causal connection can be established ... by setting in motion a series of acts by

11   others,"" *Id.* or by ""knowingly refus[ing] to terminate a series of acts by others, which [the

12   supervisor] knew or reasonably should have known would cause others to inflict a

13   constitutional injury,"" *Dubner v. City & Cnty. of San Francisco,* 266 F.3d 959, 968 (9th

14   Cir.2001). ""A supervisor can be liable in his individual capacity for his own culpable action

15   or inaction in the training, supervision, or control of his subordinates; for his acquiescence

16   in the constitutional deprivation; or for conduct that showed a reckless or callous

17   indifference to the rights of others." *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th

18   Cir.1998). Id at 1208.

19        The *Starr* court analyzed *Redman,* 942 F.2d at 1447 to support its conclusions.

20   Our decision in *Redman* is illustrative. In *Redman,* the plaintiff alleged that the facility in

21   which he was confined was overcrowded; that the Sheriff knew the facility was not a

22   proper place to detain him and posed a risk of harm but had placed him there anyway;

23   and that the Sheriff was ultimately in charge of the facility's operations. 942 F.2d at

24   1446–47. Reversing the district court's grant of a directed verdict in favor of the Sheriff, we

25   concluded that a reasonable jury could have found that the Sheriff was deliberately

26   indifferent to the plaintiff's safety. *d.* at 1447 - 48. Such a jury could have found that the

27   Sheriff "knew or reasonably should have known of the overcrowding" and that "he

28   acquiesced in a deficient policy that was a moving force behind"" the harm caused to the

12

1    plaintiff. *Id.* at 1447. Id at 1208.

2    The Plaintiff in *Starr* alleges that Sheriff Baca's knowledge of the unconstitutional
3    conditions in the jail, including his knowledge of the culpable actions of his subordinates,
4    coupled with his inaction, amounted to acquiescence in the unconstitutional conduct of his
5    subordinates. As we noted in *Redman,* under California law, "[t]he sheriff is required by
6    statute to take charge of and keep the county jail and the prisoners in it, and is answerable
7    for the prisoner's safekeeping." *Id.* at 1446 (citing Cal. Gov.Code §§§§ 26605, 26610;
8    Cal.Penal Code §§ 4006). We have held that ""acquiescence or culpable indifference""
9    may suffice to show that a supervisor ""personally played a role in the alleged
10   constitutional violations."" *Menotti v. City of Seattle,* 409 F.3d 1113, 1149 (9th Cir.2005);
11   *see Redman,* 942 F.2d at 1446. Starr's allegations that the actions or inactions of the
12   person ""answerable for the prisoner's safe-keeping"" caused his injury are therefore
13   sufficient to state a claim of supervisory liability for deliberate indifference. Id. at 1208.

14   Starr claims that Sheriff Baca ""knowingly refused to terminate a series of acts by
15   others, which he knew or reasonably should have known would cause ... constitutional
16   injury."" *Dubner,* 266 F.3d at 968. Or, to state it slightly differently, Starr claims that Sheriff
17   Baca is ""liable in his individual capacity for his own culpable action *or inaction* in the
18   training, supervision, or control of his subordinates[.]*Watkins,* 145 F.3d at 1093. It is
19   somewhat tedious to recount the many allegations in the complaint detailing what Sheriff
20   Baca knew or should have known, and what Sheriff Baca did or failed to do. Id at. 1209.

21   Similar to *Starr*, PLAINTIFFS have alleged the exact same allegations in the FAC
22   against COUNTY and additional allegations which go well beyond what is required at the
23   pleading stage of this litigation:

24
25   Plaintiffs are informed and believe and thereon allege that prior to the incident
26   alleged herein, on or before 1997 and subsequent thereto, BACA and supervisor DOES
27   knew or reasonably should have known that sheriff deputies, custody personnel and
28   supervisors, employed by COUNTY and LACSD, in the course and scope of their

13

1  employment under color of law, committed similar acts of failure to monitor inmates under
2  their watch, abandonment  of their post, ignoring inmates, failure to report deputy
3  misconduct and violation of inmates rights and delayed or denied inmates' access to
4  medical care. FAC Para 15.

5          BACA and supervisor DOES became aware, or should have become aware, and
6  should have taken corrective action to prevent repeated incidents of supervisors failing to
7  supervise subordinates who were derelict in their duties and responsibilities and
8  deliberately indifferent as set forth this matter, and to the necessity of providing
9  reasonable security for inmates, incidents of deputies delaying or denying medical and
10 mental health care to inmates, incidents of deputies and supervisors adhering to a "code
11 of silence" resulting in failures to report deputies' wrongful and unconstitutional conduct,
12 incidents of failing to conduct investigations or condoning shoddy investigations or
13 incidents, ratifying wrongful conduct by deputies and supervisors that result in serious
14 injuries to inmates or deaths of inmates, civil litigation, judgments and settlements by
15 failing to implement corrective action to prevent repetition of ongoing wrongful conduct,
16 incidents of lax or lack of supervision and training and incidents that supervisors were not
17 reporting to their superiors as necessary or required of their duties and responsibilities.
18 FAC Para 16.

19          Many of the incidents and notice to BACA and supervisor DOES of unconstitutional
20 wrongful conduct caused by a failure to provide reasonable security as required by *Farmer*
21 *v. Brenner,* are set forth a follows: Beginning in 1996, when the US Department of Justice
22 ("DOJ") began investigations of conditions of Los Angeles County Jails. On September 5,
23 1997, it gave BACA, then a supervisor, clear written notice in a "findings letter" of a
24 continued and serious pattern and practices of constitutional violations including, abuse of
25 inmates by sheriff's deputies working in the jail. At the time BACA was also a member of
26 Sheriff's Executive Council and he reviewed the DOJ's findings and thus was on notice of
27 the continued serious pattern, practice or custom of constitutional violations in the LACSD
28 and its jail. FAC Para 17.

14

1    Defendants failed to properly monitor decedent, provide adequate medical attention

2  to decedent, provide prompt medical assistance to decedent, provide proper care to

3  decedent, provide oversight of decedent, provide proper medical care, provide adequate

4  surveillance of decedent, arrange for proper supervision of decedent, and provide

5  preventative care for decedent.  There was deliberate indifference to the Decedent's

6  serious and obvious medical condition requiring care.  Defendants knew or had reason to

7  know of the need for care and failed to summon, obtain, or procure such care.

8  Defendants failed to take reasonable action by failing to properly monitor decedent,

9  provide adequate medical attention to decedent, provide prompt medical assistance to

10  decedent, provide proper care to decedent, provide oversight of decedent, provide proper

11  medical care, provide adequate surveillance of decedent, arrange for proper supervision

12  of decedent, and provide preventative care for decedent.  FAC Para 33.

13    Defendants caused the injury, and/or fostered an environment that allowed such an

14  injury to occur, and/or failed to properly monitor decedent, provide adequate medical

15  attention to decedent, provide prompt medical assistance to decedent, provide proper care

16  to decedent, provide oversight of decedent, provide proper medical care, provide

17  adequate surveillance of decedent, arrange for proper supervision of decedent, and

18  provide preventative care for decedent. FAC Para 34.

19    Defendants were aware that there was a serious and even deadly health threat to

20  Decedent. FAC Para 35.

21

22    Said defendants knew or should have known of Decedent's condition and

23  notwithstanding their knowledge of it's life-threatening and debilitating nature, they

24  intentionally denied Decedent proper care. FAC Para 36.

25    Notwithstanding this information, Defendants failed to take reasonable

26  measures to prevent the following conduct of its jail custodial staff and medical staff and

27  acted with deliberate indifference to decedents health and safety and in conscious and

28  reckless disregard of PLAINTIFF's rights and in complete derogation of their

responsibilities, did under color of law, knowingly and/or intentionally engage in the following acts and omissions among others:

    a.      The lack of properly monitoring decedent;

    b.      The lack of adequate medical attention to decedent;

    c.      The lack of prompt medical assistance;

    d.      The failure to provide care;

    e.      The lack of oversight of decedent;

    f.      The lack of proper medical care;

    g.      Inadequate surveillance of decedent;

    h.      Failure to arrange for supervision of decedent; and

    II      Failure to provide preventative care for decedent. FAC Para 37(i).

In this manner, defendants, under color of law, purposefully created a health hazard at Twin Towers and failed to protect Decedent's life and safety, to which protection Decedent had a constitutional right, and  thereby caused PLAINTIFFS injury. Said defendants acted as they did in part because they knew or were otherwise aware that they would receive no discipline or punishment for their conduct and that their constitutionally violative conduct would otherwise be ratified and condoned by their superiors. FAC Para 38.

Defendants were aware that its custodial staff and medical staff was engaging in said conduct and negligently failed to take measures to prevent such conduct. FAC Para 39.

Further, Defendants failed to implement various protocols which were intended to prevent, control and avoid inmate dangers. FAC Para 40.

Said Defendants also deliberately failed to implement protocols developed by the Los Angeles County Sheriff's Department as to the prevention, detection and treatment of

1   inmates. FAC Para 41.

2       Said defendants knew that by not training their staffs and by not implementing the
3   protocols, inmates could suffer serious, permanent and debilitating injury as a result. FAC
4   Para 42.

5       Thereafter, as a further direct and proximate result of the failure of said Defendants
6   to train their staffs and implement the protocols, Decedent was denied prompt medical
7   care and treatment by jail and medical staff at Twin Towers and passed away. FAC Para
8   43.

9       At said time and place, as aforesaid, Defendants, and each of them, so negligently,
10  carelessly, recklessly, wantonly and unlawfully treated and handled Decedent JIMMY
11  CORNEJO  in causing the injury, and/or fostering an environment that allowed such an
12  injury to occur, and/or failed to properly monitor decedent, provide adequate medical
13  attention to decedent, provide prompt medical assistance to decedent, provide proper care
14  to decedent, provide oversight of decedent, provide proper medical care, provide
15  adequate surveillance of decedent, arrange for proper supervision of decedent, and
16  provide preventative care for decedent so as to directly and proximately cause Decedent's
17  death. FAC Para 44.
18

19      All of decedent's injuries could have been easily avoided had he been timely and
20  and appropriately treated.  FAC Para 45.

21      The specific constitutional rights that have been violated has been delineated in the
22  FAC, versus *Baker v. McCollan,* 443 U.S. 137 (1979) and *Albright v. Oliver* 510 U.S. 266
23  (1994), cases that were cited by COUNTY.

24      *PPG Industries v. TransAmerica* 20 Cal. 4th 310 (1999) cited by COUNTY is not
25  analogous to the instant case as *PPG Industries* involved the payment of punitive
26  damages awarded in a third party lawsuit against an insured as a result of an unsured's
27  intentional, morally blameworthy behavior against the third party.
28

*Rosh v. Cave Imaging Systems* 26 Cal. App 4th 1225 (1994) also cited by COUNTY is inapposite to the instant case in that involved an appeal of improper jury verdict, and in that case there was allegedly no evidence that the defendant proximately caused the plaintiff's injuries. This bears no relationship to what is being plead by the PLAINTIFFS IN this matter.

Similarly this case is not in any way similar to the negligent act of leaving a newspaper and pillows in a stairway, in *Daniels v. Williams* 474 U.S. 327, 106 S. Ct. 663 (1986), also cited by COUNTY, nor medical malpractice matter in *Estelle v. Gamble* 429 U.S. 97, S. Ct. 285, 292 (1976), cases that were also referred to in COUNTY's Motion.

## V.   THE FIRST CLAIM IS NOT DUPLICATIVE OF THE SECOND CLAIM FOR RELIEF

PLAINTIFFS have sufficiently plead a cause of action under *Monell v. Dept of Social Services of New York*, 436 U.S. 658, (1978).

As a result of the aforementioned policies, practices, procedures, customs, acts, omissions and systematic deficiencies of Defendants and medical staff at Twin Towers, Decedent died.  Had Defendants acted properly, decedent's death would have been avoided. Fac Para 64.

## VI.   PLAINTIFFS HAVE NOT FAILED TO STATE A CLAIM FOR RELIEF UNDER THE EIGHTH AMENDMENT AS DECEDENT MAY HAVE BEEN A CONVICTED PRISONER

PLAINTIFFS allege that Decedent may have been a convicted prisoner and PLAINTIFFS are entitled to conduct discovery pertaining to this issue.

Defendants acted in reckless and callous disregard for the constitutional rights of Plaintiffs and Decedent (who may have been a convicted prisoner), Hispanic-Americans. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious FAC 70.

///

1    VII.   **CONCLUSION**

2          For the foregoing reasons, PLAINTIFFS respectfully request that this Court deny

3    COUNTY's Motion to Dismiss PLAINTIFFS First Amended Complaint.

4    Dated: July 2, 2012                          CHISVIN & ASSOCIATES

5

6                                                 By:_____
                                                  Craig L. Chisvin, Esq.,
7                                                 Attorneys for Plaintiffs,
                                                  FEDENCO CORNEJO, ESTATE OF JIMMY
8                                                 CORNEJO and SYLVIA AMESQUITA

9
     Dated: July 2, 2012                          LAW OFFICES OF RAFAEL SHPELFOGEL, PC
10

11

12                                                By:_____

13                                                Rafael Shpelfogel, Esq.,
                                                  Attorneys for Plaintiffs,
14                                                FEDENCO CORNEJO, ESTATE OF JIMMY
                                                  CORNEJO and SYLVIA AMESQUITA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS

1 | **CERTIFICATE OF SERVICE**

2 | STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3 |     I hereby certify that on **July 2, 2012**, I electronically filed the foregoing
**PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTY OF LOS ANGELES' MOTION**
4 | **TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND**
**AUTHORITIES** with the Clerk of the Court using the CM/ECF system which will send
5 | notification of such filing(s) to the following:

6 |

7 | David D. Lawrence, Esq.   dlawrence@lbaclaw.com
LAWRENCE BEACH ALLEN & CHO, PC
8 | 100 West Broadway, Suite 1200
Glendale, CA 91210-1219
9 | Telephone No.: 818-545-1925; Facsimile No.: 818-545-1937
**Attorneys for Defendant, SHERIFF LEROY D. BACA**

10 |

11 | Rickey Ivie, Esq.       rivie@imwlaw.com
Jennifer R. Jacobs, Esq.   jjacobs@imwlaw.com
IVIE, McNEILL & WYATT
12 | A Professional Law Corporation
444 S. Flower Street, Suite 1800
13 | Los Angeles, CA 90071
Telephone No.: 213-489-0028; Facsimile No.: 213-489-0552
14 | **Attorneys for Defendant, COUNTY OF LOS ANGELES, A Governmental Entity**

15 | Rafael Shpelfogel, Esq.,
rshpel@hotmail.com
16 | LAW OFFICES OF RAFAEL SHPELFOGEL PC
6404 Wilshire Boulevard, Ste 930
17 | Los Angeles, CA 90048
Tel: (323) 651-0560; Facsimile No.: (323) 651-0561
18 |

19 | Executed on July 2, 2012, at Commerce, California.

20 |

21 | __X__   I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.

22 |

23 |
_____
ALEX MARTINEZ

24 |

25 |

26 |

27 |

28 |

PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS